IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

```
NIKE, INC., an Oregon corporation, )
                                   )    2:05-cv-1468-GEB-JFM
                Plaintiff,         )
                                   )
     v.                            )    ORDER
                                   )
NIKEPAL INTERNATIONAL, INC.,       )
a California corporation,          )
                                   )
                Defendant.         )
_____)
```

Pending are cross motions for summary judgment. For the following reasons, Plaintiff's motion is denied and Defendant's motion is denied in part and granted in part.

## BACKGROUND

Plaintiff Nike, Inc. is an Oregon corporation engaged in the design, development and distribution of footwear and other products whose beginnings date back to 1968. (Def.'s Response to Pl.'s Statement of Undisputed Facts ("SUF") ¶¶ 1, 2, 10.) Plaintiff adopted the mark "NIKE" to brand its footwear products in 1971. (Id. ¶ 5.) Defendant NikePal International, Inc. is a California corporation that began doing business in 1998 providing import, export and distribution services of products such as syringes, valves and cardboard boxes.

1

1  (Pl.'s Response to Def.'s SUF ¶¶ 44, 46.)  In September 2000,
2  Defendant filed an application for registration of its service mark
3  "NIKEPAL" with the United States Patent and Trademark Office ("PTO").
4  (Id. ¶ 1.)  Plaintiff thereafter filed, in the Trademark Trial and
5  Appeal Board ("TTAB") of the PTO, a Notice of Opposition to the
6  registration of Defendant's mark.  (Pl.'s Mot. for Partial Summ. J.
7  ("Pl.'s Mot.") at 11:2-3; Def.'s Mot. for Partial Summ. J. ("Def.'s
8  Mot.") at 5:26-27; see also Supplemental Decl. of Gina Durham in Supp.
9  of Pl.'s Mot. ("Suppl. Durham Decl.") ¶ 2, Ex. 2.)  Plaintiff alleged
10 in the opposition proceeding before the TTAB that Defendant's mark,
11 NIKEPAL, was likely to cause confusion with Plaintiff's own mark,
12 "NIKE," and that "use of the mark NIKEPAL in connection with
13 [Defendant's] services dilutes the distinctiveness of [Plaintiff's]
14 mark . . . ."  (Decl. of Gina Durham in Supp. of Pl.'s Mot. ("Durham
15 Decl.") ¶ 6, Ex. F at 2; see also Pl.'s Response to Def.'s SUF ¶ 3.)
16 The TTAB dismissed Plaintiff's opposition "on the grounds of
17 likelihood of confusion and dilution."  (Pl.'s Response to Def.'s SUF
18 ¶ 7; Durham Decl. ¶ 6, Ex. F at 14, 16.)
19      Plaintiff subsequently instituted the instant action in
20 which it seeks, inter alia, reversal of the TTAB's decision to grant
21 registration to Defendant under 15 U.S.C. § 1071(b) on the grounds
22 that Defendant's mark is likely to cause confusion with Plaintiff's
23 mark and that Defendant's mark dilutes Plaintiff's mark (Count I).
24 (Amended Complaint ("Compl.") ¶ 39.)  As additional, or alternative,
25 grounds for reversing the TTAB's decision and denying registration to
26 Defendant's mark, Plaintiff also seeks a determination that
27 Defendant's application is void ab initio (Count VI) and that
28 Defendant committed fraud on the PTO in connection with its

2

application (Count VII). (Id. ¶¶ 59, 61; Pl.'s Mot. at 25:2-7.) Further, Plaintiff seeks injunctive and monetary relief on the grounds of trademark and service mark infringement based on likelihood of confusion in violation of 15 U.S.C. § 1114 (Count II); federal unfair competition in violation of 15 U.S.C. § 1125(a) (Count III); federal trademark dilution in violation of 15 U.S.C. § 1125(c) (Count IV); and a violation of California Business and Professions Code section 14330 on the grounds that Defendant's actions are likely to injure Plaintiff's business reputation or dilute the distinctiveness of Plaintiff's mark (Count V). (Id. ¶¶ 41, 45, 51, 55.)

Plaintiff moves for summary judgment on Counts I, IV, V, VI, and VII. (Notice of Pl.'s Mot. for Summ. J. at 1:24-28, 2:1-5.) Defendant counter moves for summary judgment on the same Counts except for Count VII (Plaintiff's fraud claim).[1] (Def.'s Mot. at 1:26, 2:1-8.)

## DISCUSSION[2]

### I. Void ab initio and fraud on the PTO claims (Counts VI and VII)

Both parties move for summary judgment on Plaintiff's claim that Defendant's application to the PTO was void ab initio and Plaintiff moves for summary judgment on its claim that Defendant committed fraud on the PTO. (Pl.'s Mot. at 25:4-7; Def.'s Mot. at

---

[1] Both parties also object to the admissibility of certain evidence in support of the motions. (See Def.'s Opp'n to Pl.'s Mot. ("Def.'s Opp'n") at 14:6-8; Def.'s Reply to Pl.'s Consolidated Reply & Opp'n to Cross-Motion for Partial Summ. J. ("Def.'s Reply") at 15:6-14; Pl.'s Reply to Its Mot. & Opp'n to Def.'s Mot. ("Pl.'s Reply") at 11:5-7; Pl.'s Evidentiary Objections and Requests to Strike.) However, since the evidentiary objections and motion to strike are not pertinent to the issues decided herein, they are not reached.

[2] The standards for summary judgment are well known and need not be repeated here.

25:27-28.)  Specifically, Plaintiff argues that Defendant's application "is void ab initio because at the time that [Defendant] filed its application to register its . . . mark, it had not actually used the mark in connection with all of the services it set forth in its application."  (Pl.'s Mot. at 25:9-11.)  Further, Plaintiff claims that Defendant's "actions amounted to fraud on the PTO" because its statements "were knowingly false and material and [Defendant] intended the PTO to rely upon those statements."  (Id. at 27:14-17.)

     Defendant argues that Plaintiff "improperly seeks to raise new issues in this . . . [p]roceeding that it did not raise or litigate below in the TTAB . . . ."  (Def.'s Opp'n at 27:22-23; Def.'s Mot. at 26:7-9.)  Plaintiff rejoins that the void ab initio and fraud "theories" were raised in the TTAB proceedings even though they "may not have been fully developed into legal theories."  (Pl.'s Reply at 20:21-23.)  Plaintiff points to its Notice of Opposition (filed in the TTAB proceeding) where it alleged that the "[a]pplicant was not using the mark NIKEPAL for Applicant's services in the ordinary course of trade prior to the September 6, 2000 filing date of the opposed application."  (Suppl. Durham Decl. ¶ 2, Ex. 2 at 2.)

     In order for Plaintiff to have raised the legal issue in the TTAB proceedings, the issue must have been considered on its merits.

> We are satisfied that Congress did not intend, by setting up review in this court, to transfer the functions of the Patent Office to the District Court . . . . The court benefits from, and is entitled to, the trained and experienced determinations of the Patent Office on these questions which more often than not involve problems both intricate and subtle. We will not pass upon those claims which have not first been considered on the merits by the Patent Office.

4

Gold Seal Co. v. Weeks, 129 F. Supp. 928, 937 (D.D.C. 1995); see also Mitchell Cosmetics Sarl v. Pramil S.R.L., 2005 WL 3273371, at *2-3 (D.D.C. Aug. 29, 2005); see generally J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 21.21 (4th ed. 2006).  In this case, neither the void ab initio nor the fraud on the PTO claims were discussed, or even mentioned, in Plaintiff's brief before the TTAB; nor were they mentioned in the TTAB's decision.  (Decl. of Catherine Ashley Straight in Supp. of Def.'s Mot. ("Straight Decl.") ¶¶ 5, 6, Ex. 15, Ex. 16; Durham Decl. ¶ 6, Ex. F.)  Furthermore, Plaintiff's Notice of Opposition does not mention these equitable "theories." (Durham Suppl. Decl. ¶ 2, Ex. 2 at 2.)

Accordingly, since the void ab initio and fraud on the PTO claims were not raised before the TTAB, Plaintiff's motion for summary judgment on these claims is denied.[3]  Defendant's motion for summary judgment on the void ab initio claim is granted.

## II. Dilution

### A. Federal anti-dilution claim (Count IV)

Plaintiff argues it is entitled to summary judgment on its federal dilution by blurring claim.  (Pl.'s Mot. at 12:20-21, 14:20-21.)  Defendant counters that it is entitled to summary judgment on this issue because Plaintiff cannot establish that its mark is

---

[3] Plaintiff raises the additional argument that even if it "had altogether failed to raise [the fraud on the PTO] issue in the TTAB proceeding, [Plaintiff] would still be allowed to bring a fraud claim in this Court."  (Pl.'s Reply at 21:22-27, n.16.)  As support, Plaintiff cites to 15 U.S.C. § 1064(3) which provides that "a petition to cancel a registration of a mark . . . may be filed . . . [a]t any time if . . . its registration was obtained fraudulently."  However, a "petition" under 15 U.S.C. § 1064(3) does not refer to a proceeding before a federal district court.  See 37 C.F.R. § 2.111(a) ("[a] cancellation proceeding is commenced by the filing of a timely petition . . ., together with the required fee, in the [PTO].").

5

1  famous or that Defendant's mark causes dilution by blurring.  (Def.'s
2  Mot. at 11:22-24, 13:25-26.)
3          On October 6, 2006, the Trademark Dilution Revision Act
4  ("TDRA") went into effect, thereby amending the previous anti-dilution
5  statute.  Under the TDRA:
6          [T]he owner of a famous mark that is distinctive,
           inherently or through acquired distinctiveness,
7          shall be entitled to an injunction against another
           person who, at any time after the owner's mark has
8          become famous, commences use of a mark or trade
           name in commerce that is likely to cause dilution
9          by blurring or dilution by tarnishment of the
           famous mark, regardless of the presence or absence
10         of actual or likely confusion, of competition, or
           of actual economic injury.
11
12 15 U.S.C. § 1125(c)(1).  A "famous" mark is one that "is widely
13 recognized by the general consuming public of the United States as a
14 designation of source of the goods or services of the mark's owner."
15 Id. § 1125(c)(2)(A).[4]  The TDRA defines dilution by blurring as an
16 "association arising from the similarity between a mark or trade name
17 and a famous mark that impairs the distinctiveness of the famous
18 mark."[5]

---

19      [4]  A court may consider the following factors in determining
20 whether a mark is famous:

21         The duration, extent, and geographic reach of
           advertising and publicity of the mark, whether
22         advertised or publicized by the owner or third
           parties[;] [t]he amount, volume, and geographic
23         extent of sales of goods or services offered under
           the mark[;] [t]he extent of actual recognition of
24         the mark[; and] [w]hether the mark was registered
           under the Act of March 3, 1881, or the Act of
25         February 20, 1905, or on the principal register.
26 15 U.S.C. § 1125(c)(2)(A).
27      [5]  A court may consider the following factors in determining
28 whether a mark or trade name is likely to cause dilution by blurring:
                                                          (continued...)

6

1		In support of its motion, Plaintiff submitted, *inter alia*,
2	survey evidence (the "Johnson survey") that allegedly indicates that a
3	substantial majority of laboratory equipment purchasers think of NIKE
4	when encountered with Defendant's website, "nikepal.com." (Def.'s
5	Response to Pl.'s SUF ¶ 71; Decl. of Philip Johnson in Supp. of Pl.'s
6	Mot. ("Johnson Decl.").) Plaintiff contends that the survey supports
7	certain factors relevant to the dilution claim, specifically that NIKE
8	is a highly recognized mark and that there is an actual association
9	between Plaintiff and Defendant's mark. (Pl.'s Mot. at 14:12-13,
10	16:17-20, 17:1-2.) Further, Plaintiff claims that Defendant "has
11	offered no evidence to rebut the Johnson [survey]." (Pl.'s Reply at
12	13:12-13.)
13		Defendant contends that the survey is "fatally flawed"
14	because it was only directed to Defendant's website which is not "a
15	service mark which is in issue in this action" and because it was
16	administered by telephone and thus "the survey could NOT possibly
17	present Defendant's service mark in the context in which Defendant
18	uses its mark." (Def.'s Opp'n at 22:21, 27-28; 23:1, 2-4.) Defendant
19	also claims the "survey was not directed to the general consuming

---

[5](...continued)

> The degree of similarity between the mark or trade name and the famous mark[;] [t]he degree of inherent or acquired distinctiveness of the famous mark; [t]he extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark; [t]he degree of recognition of the famous mark; [w]hether the user of the mark or trade name intended to create an association with the famous mark[; and][a]ny actual association between the mark or trade name and the famous mark.

15 U.S.C. § 1125(c)(2)(B).

public of the United States" and that only a "small number of persons were surveyed." (Id. at 22:16-17, 22.)

Plaintiff counters that "[t]he Johnson Study demonstrates a stunning level of recognition of the NIKE mark . . . ." (Pl.'s Reply at 13:11-12.) Plaintiff also argues that "nikepal.com" is the address of Defendant's website and "[c]onsumers encounter the website [featuring] syringes sold by [Defendant], searching for Defendant on the world wide web and in other ways." (Id. at 13:23-25, 14:1.) Further, Plaintiff claims "[i]t is disingenuous for [Defendant] to suggest that a telephone survey is an inappropriate means for an expert to gather evidence in this case" because Defendant "accepts telephonic orders from its United States customers" and thus the Johnson study is "replicating the marketplace." (Id. at 17:23-25, n. 14.)

"The Ninth Circuit has stated that surveys in trademark cases are to be admitted as long as they are conducted according to accepted principles." E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1292 (9th Cir. 1992). Furthermore, "it is routine to admit a relevant survey; any technical unreliability goes to weight, not admissibility." Id.; see also Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1143 (9th Cir. 1997) ("Defendants' . . . objections–that the survey was only conducted in Southern California and asked leading questions–go only to the weight, and not the admissibility, of the survey.").

> Treatment of surveys is a two-step process. First, is the survey admissible? That is, is there a proper foundation for admissibility, and is it relevant and conducted according to accepted principles? This threshold question may be determined by the judge. Once the survey is admitted, however, follow-on issues of methodology, survey design, reliability, and the

8

>       experience and reputation of the expert, critique
>       of conclusions, and the like go to the weight of
>       the survey rather than admissibility. These are
>       issues for a jury, or, in a bench trial, for a
>       judge.

Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1263 (9th Cir. 2001) (internal citations omitted).

Defendant does not argue that the Johnson survey is inadmissible. (See Def.'s Opp'n at 22:21, 27-28; 23:1, 2-4.) Instead, Defendant's contentions concern issues of "methodology, survey design, reliability, . . . critique of conclusions, and the like" and therefore speak to its technical unreliability. Clicks Billiards, Inc., 251 F.3d at 1263. However, not all surveys, even when admissible, raise questions of fact that would defeat a motion for summary judgment. This is not meant to "suggest[] that the presence of a survey will always preclude summary judgment." Id. at 1263-64. The question is whether the Johnson survey is "*so badly flawed* that it cannot be used to demonstrate the existence of a question of fact on the [dilution claim]." Universal City Studios, Inc. v. Nintendo Co., 746 F.2d 112, 118 (2d Cir. 1984) (emphasis added).

Defendant's contention that the survey is limited to Defendant's website name and conducted only by telephone may diminish its weight, but it does not indicate the Johnson survey is "so badly flawed that it cannot be used to demonstrate the existence of a question of fact on the [dilution claim]." Id. Further, Defendant's assertion that the survey is flawed because, among other reasons, the "survey was not directed to the general consuming public of the United States" has not been supported by authority. The survey targeted laboratory research professionals which included a targeted sample of

9

Defendant's customer base and potential consumers that Mr. Johnson asserts Defendant "describes as its target industries." (Pl.'s Mot., Decl. of Philip Johnson at 4.)  "'To be probative and meaningful . . . surveys . . . must rely upon responses by potential consumers of the products in question.'" Universal City Studios, Inc., 746 F.2d at 118 (internal citation omitted).  Similarly, although Defendant argues that only a "small number of persons were surveyed[,]" Defendant does not point to any authority suggesting that a survey of 301 laboratory research professionals is fatally flawed.

> [A] reasonable juror might ultimately [find] that the survey" d[oes or does] not [support Plaintiff's contention that its mark was diluted]. But the juror could only have done so after considering conflicting evidence and deciding what weight to accord the survey . . . .  This undertaking describes the proper role for a trier of fact; it is not the role of a district court at the summary judgment stage where the issue is whether a triable issue of fact even exists.

Clicks Billiards, Inc., 251 F.3d at 1263.  Accordingly, both parties' motions for summary judgment on Count IV are denied because the Johnson survey creates genuine issues of material fact as to factors bearing on the federal dilution claim.

### B. California anti-dilution claim (Count V)

Plaintiff seeks summary judgment on its California anti-dilution claim (Count V) arguing that since Defendant's "use of NIKEPAL is causing a likelihood of dilution of the distinctive quality of [Plaintiff's] famous NIKE mark [under the federal anti-dilution statute,] [Plaintiff] is also entitled to summary judgment under

1  California's anti-dilution statute []."  (Pl.'s Mot. at 18:1-5.)
2  Defendant argues that "[t]he evidence [it] produced with respect to
3  Plaintiff's federal claim for dilution . . . is compelling evidence
4  for a finding in Defendant's favor on [this claim]."  (Def.'s Mot. at
5  25:16-17.)  The same factual disputes that prevent granting summary
6  judgment on the federal dilution claim also apply to the anti-dilution
7  claim under California law.  See Cal. Bus. & Profs. Code § 14330.
8  Therefore, the parties' motions for summary judgment on Count V are
9  denied.

### C. Reversal of the TTAB decision (Count I)

11         Plaintiff seeks summary judgment on its claim that the
12 TTAB's decision on dilution is erroneous and must be reversed because
13 under the TDRA, "use and registration of the NIKEPAL mark is likely to
14 cause dilution" and "the TTAB's decision, under either version of the
15 anti-dilution statute, is not supported by findings which withstand
16 [analysis under] the substantial evidence rule."  (Pl.'s Mot. at
17 18:24, 19:2-4.)  Defendant opposes Plaintiff's motion and moves for
18 summary judgment seeking to have the TTAB's decision affirmed on the
19 grounds that its findings are in accordance with the TDRA and are
20 "supported by substantial evidence."  (Def.'s Opp'n at 8:20-21, 11:5-
21 6, 10:19-21; Def.'s Mot. at 8:14-15, 27-28.)
22         Plaintiff has introduced new evidence concerning the TTAB
23 decision.  A party appealing a TTAB decision to a federal district
24 court under 15 U.S.C. § 1071(b)(1), is permitted to introduce new
25 evidence.  See CAE, Inc. v. Clean Air Eng'g, Inc., 267 F.3d 660, 674
26 (7th Cir. 2001).  When new evidence is introduced, "the district
27 court's review of the TTAB's decision is considered de novo [even
28 though] the district court must  . . . afford deference to the fact

11

findings of the TTAB." Id.; see also Louis Altman, Callmann on Unfair Competition, Trademarks and Monopolies § 26:57 (4th ed. 2006) ("When review of a [TTAB] decision takes place in a federal district court, the proceeding takes the form of a trial de novo, in which the fact findings of the Board are entitled to deference, but the parties are free to submit additional evidence.").

Plaintiff has introduced as new evidence, *inter alia*, the Johnson survey, from which "divergent ultimate inferences may reasonably be drawn" that bear on the TTAB's decision on the dilution issue. Miller v. Glen Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006). Therefore, neither movant prevails on its motion for summary judgment on Count I.

CONCLUSION

For the stated reasons, Plaintiff's motion for partial summary judgment is denied as to all claims. Defendant's motion for partial summary judgment on Count VI (Plaintiff's void ab initio claim) is granted and is denied as to all other claims.

Dated: February 27, 2007

```
                                   _____
                                   GARLAND E. BURRELL, JR.
                                   United States District Judge
```